IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| JIMMIE DAILEY | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:06CV779-HSO-JMR |
| | § | |
| HUNTINGTON INGALLS, INC. | § | DEFENDANT |

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER COMES BEFORE THE COURT on a Motion for Summary

Judgment filed by Defendant Huntington Ingalls,[1] ["Ingalls"] on February 15, 2011

[404]. On April 29, 2011, Plaintiff Jimmie Dailey ["Dailey"] tendered a Response

[408, 409, 410]. Ingalls filed a Rebuttal on May 16, 2011 [412]. After due

consideration of the record, the submissions on file, and the relevant legal

authorities, the Court finds that because Dailey is unable to maintain his claims as

a matter of law, Ingalls is entitled to summary judgment.

I. FACTS AND PROCEDURAL HISTORY

A. Procedural History

An initial Complaint [1] was filed in this Court on March 21, 2001, and a

First Amended Complaint [2] was filed on April 26, 2001, naming eleven (11)

individuals and the Ingalls Workers for Justice as Plaintiffs. Dailey was not a

---

[1]Counsel for Defendant filed a Motion to Substitute Party on June 7, 2011
[414-1]. The Court granted said Motion as unopposed and Defendant's name in the
style of the case was changed from "Northrop Grumman Shipbuilding, Inc.," to
"Huntington Ingalls, Incorporated."

named Plaintiff in the original suit.[2]  Named Defendants were Ingalls Shipbuilding
Company, Litton Industries, and Northrop Grumman.  As detailed in its
Memorandum Opinion [16] of February 27, 2002, and pursuant to its Judgment of
February 28, 2002 [17], the Court dismissed Plaintiffs' Thirteenth Amendment and
Title VI claims, dismissed Litton Industries and Northrop Grumman as Defendants,
dismissed Ingalls Workers for Justice as a Plaintiff, and dismissed Plaintiffs' class
action claims.

On July 16, 2002, by way of a Motion for Leave to File a Complaint in
Intervention [27], putative class members requested leave to intervene as Plaintiffs
in this action, pursuant to Federal Rule of Civil Procedure 24.  Subsequently,
Ingalls' Motion to Sever was granted by Order entered August 17, 2006 [360], which
required Plaintiffs to file separate complaints.  Following severance of his claims,
Dailey filed a  Second Amended Complaint [362] on October 6, 2006.

In 2008, the Court entered an Order administratively closing all Ingalls cases
while the claims of all but fourteen (14) Ingalls plaintiffs were heard and resolved
through arbitration.  Dailey was one (1) of the fourteen (14) who opted out of the
arbitration proceedings.  The above captioned cause was reopened on June 16, 2010,
upon conclusion of the various arbitrations.  Following a status conference held on
August 23, 2010, the Court determined that all discovery had been completed, and

---

[2]Dailey is listed as one of one hundred forty-three (143) individuals who
comprised the Ingalls Workers for Justice and who filed a charge with the Equal
Employment Opportunity Commission on January 28, 2000.  *See* EEOC Charge
[404-1].

set this case for trial to commence on the Court's August 2011 trial calendar.   The

parties jointly moved for, and the Court granted, a continuance, and this case was

reset on the Court's October 2011 calendar.

B.    Factual Background

Jimmie Dailey was first hired by Ingalls in January 1972, as a welder.  He

worked there continuously until he retired in January 2010.[3]  Pl.'s Employment

App., att. as Ex. "69" to Pl.'s Resp. to Mot. for Summ. J. (listing Dailey's

reinstatement date as September 19, 1974).   During his tenure at Ingalls, Dailey

served as a Union Steward.  Aff. of Jimmie Dailey, at pp. 1-2, att. as Ex. "1" to Resp.

to Mot. for Summ. J.

In his Amended Complaint, Dailey seeks injunctive and declaratory relief to

prevent alleged systemic and unjustified race discrimination by Defendant with

regard to the retention, terms and conditions of employment, treatment, and

promotion and transfer of African-American employees.  Pl.'s Compl., ¶ ¶ 17-19.[4]

---

[3]The record reflects that during 1972-1973, Dailey was deployed as a Marine. Upon his return, he reapplied and resumed working at Ingalls in 1974.  During his tenure at Ingalls, Dailey actively served in the U.S. Marine Corps Reserves up and until his retirement in 2010.

[4] Though not addressed by Ingalls in its Motion, and not necessary for the Court to decide in light of its decision to grant Ingalls' Motion, the Court notes that Dailey's request for equitable relief is likely inappropriate in this case.  *See Gordon v. JKP Enters., Inc.*, 35 F. App'x 386, 2002 WL 753496, *6-*7 (5th Cir. 2002) (holding that injunctive relief under either Title VII or section 1981 was not appropriate as the plaintiffs were no longer employed).  Dailey has retired from Ingalls.  Oct. 26, 2010, Dep. of Jimmy Dailey, at p. 24-25, attached as Ex. "E" to Def.'s Mot. for Summ. J.  There is no indication in the record that he seeks reinstatement, plans to seek employment with Ingalls in the future, or would otherwise benefit from an injunction.  *See Gordon*, 2002 WL 753496, at *6-*7.

Dailey alleges severe, pervasive, and ongoing harassment of African-American employees through longstanding maintenance of a racially hostile work environment. *Id.*, ¶¶ 29-36. In addition to injunctive and declaratory relief, Dailey seeks compensatory and punitive damages. *Id.*, ¶ 1.

In its present Motion, Defendant moves the Court to grant summary judgment on all claims asserted in Dailey's Complaint. Defendant contends that many of Dailey's discrimination claims are barred by the applicable statutes of limitations, and that it is otherwise entitled to judgment as a matter of law on Dailey's remaining claims.

## II. <u>DISCUSSION</u>

### A.   <u>Summary Judgment Standard</u>

Rule 56(a) of the Federal Rules of Civil Procedure states that the Court shall grant summary judgment on each claim or defense on which summary judgment is sought if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Meyers v. M/V Eugenio C.*, 842 F.2d 815, 816 (5th Cir. 1988).

To rebut a properly supported motion for summary judgment, the opposing party must present significant probative evidence, since there is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Booth v. Wal-Mart Stores, Inc.*, 75 F. Supp. 2d 541, 543

(S.D. Miss. 1999).  If the evidence is merely colorable, or is not significantly probative, summary judgment is appropriate.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  The nonmovant may not rely on mere denials of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda.  *Booth,* 75 F. Supp. 2d at 543.

The mere existence of a disputed factual issue does not foreclose summary judgment.  The dispute must be genuine, and the facts must be material.  *Id.*  With regard to "materiality," only those disputes or facts that might affect the outcome of the lawsuit under the governing substantive law will preclude summary judgment. *Id.* (citing *Phillips Oil Company v. OKC Corp.,* 812 F.2d 265, 272 (5th Cir. 1987)). Where "the summary judgment evidence establishes that one of the essential elements of the plaintiff's cause of action does not exist as a matter of law, . . . . all other contested issues of fact are rendered immaterial."  *Id.* (quoting *Topalian v. Ehrman,* 954 F.2d 1125, 1138 (5th Cir. 1987)).

B.    Applicable Statutes of Limitations

Dailey's claims are brought pursuant to 42 U.S.C. § 2000 ("Title VII") and 42 U.S.C. § 1981 ("Section 1981"), whose respective statutes of limitations are discussed below.

1.    Title VII

"Title VII requires persons claiming discrimination to file a charge with the EEOC within 180 days after the allegedly discriminatory practice occurs and this period begins to run from the time the complainant knows or reasonably should

-5-

have known that the challenged act has occurred." *Vadie v. Miss. State University*, 218 F.3d 365, 371 (5th Cir. 2000); *see also* 42 U.S.C. § 2000e-5(e)(1).  Although the filing of a timely charge with the EEOC is not a jurisdictional prerequisite to a suit in federal court, it is a requirement that is similar to the statute of limitations, and is therefore subject to the doctrines of waiver, estoppel, and equitable tolling.  *Cruce v. Brazosport Independent School Dist.*, 703 F.2d 862, 863 (5th Cir. 1983).  Thus, a plaintiff cannot sustain a claim under Title VII for events which occurred more than 180 days before the filing of the charge of discrimination, absent a showing of waiver, estoppel, and/or equitable tolling.  *Id.*

Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easily identified.  Each incident of discrimination and each retaliatory adverse employment decision constitute a separate, actionable unlawful employment practice.  *Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 114 (2002).  In *Morgan*, the United States Supreme Court explained that "[h]ostile work environment claims are different in kind from discrete acts.  Their very nature involves repeated conduct."  *Id.* at 115; *see also Frank v. Xerox Corp.*, 347 F.3d 130, 136 (5th Cir. 2003) ("Under the continuing violations doctrine, a plaintiff may complain of otherwise time-barred discriminatory acts if it can be shown that the discrimination manifested itself over time, rather than in a series of discrete acts.").  The parties have not briefed the continuing violation theory.  However, because Dailey has raised the continuing violation doctrine in his Complaint, Compl. ¶ 32, the Court will address it.

The Fifth Circuit has stated that the continuing violation doctrine "has been endorsed for use by [it] under limited circumstances." *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 351 (5th Cir. 2001).  It has explained that

> [i]n order to rely on a continuing violation theory, a plaintiff must show that the harassment within the limitations period and the harassment outside the limitations period constituted "a series of related acts" and that "an organized scheme led to and included the present violation." *See Pegram v. Honeywell, Inc.*, 361 F.3d 272, 279 (5th Cir.2004); *Felton v. Polles*, 315 F.3d 470, 485 (5th Cir. 2002) (citing *Celestine v. Petroleos de Venezuela SA*, 266 F.3d 343, 352 (5th Cir. 2001)).  This court has looked to at least three factors in determining whether acts are sufficiently related to constitute a continuing violation: (1) whether the alleged acts involve the same type of discrimination, tending to connect them in a continuing violation; (2) whether the acts are in the nature of recurring events, or are more in the nature of isolated events; and (3) whether the act or acts have the degree of permanence that should alert an employee to assert his rights. *Huckabay v. Moore*, 142 F.3d 233, 239 (5th Cir. 1998).

*Butler v. MBNA Technology, Inc.*, 111 F. App'x 230, 232-33, 2004 WL 2244203, *2 (5th Cir. 2004).

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation." *Celestine*, 266 F.3d at 352.  With respect to discrete acts of discrimination, *Morgan* held that application of the continuing violation theory to these types of claims depends on the nature of the claim asserted:

> First, discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges.  Each discrete discriminatory act starts a new clock for filing charges alleging that act.  The charge, therefore, must be filed within the 180- or 300-day time period after the discrete discriminatory act occurred.  The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related

discrete acts so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. Nor does the statute bar an employee from using the prior acts as background evidence in support of a timely claim.

*Id.* at 113.

The *Morgan* Court concluded that the continuing violation theory does not apply to Title VII claims alleging discrete discriminatory acts arising outside the applicable statutory time period.  Therefore, in order to timely file suit under Title VII, the charge must be filed within 180 days of the alleged discrete discriminatory act.  42 U.S.C. § 2000e-5(e)(1).  The time limitations period set forth in Title VII commences with the date of "the alleged unlawful employment practice."  42 U.S.C. § 2000e-5(e); *see also Delaware State College v. Ricks*, 449 U.S. 250, 259 (1980)(holding that the present day effects of past discrimination are not actionable under Title VII); *Huckabay v. Moore,* 142 F.3d 233, 240 (5th Cir. 1998)(one time employment event such as "demotion is the sort of discrete and salient event that should put the employee on notice that a cause of action has accrued.").

The EEOC charge that led to this litigation was signed on January 14, 2000, and received by the EEOC on January 28, 2000.  Charge of Discrimination, attached as Ex. "A" to Def.'s Mot. for Summ. J.  Defendant maintains that the date filed is January 14, 2000, and that Dailey cannot recover under Title VII for alleged discrimination or harassment occurring before July 18, 1999.  Def.'s Mem. Br. in Support of Mot. for Summ. J. at p. 2.  However, there is Fifth Circuit precedent indicating that the filed date would be January 28, 2000, making the cutoff date August 1, 1999.  *Taylor v. Gen. Tel. Co. of Sw.,* 759 F.2d 437, 441–42 (5th Cir. 1985)

(charge is "filed" under Title VII when it is received by EEOC) (citing 29 C.F.R. §

1601.13(a)).  The Court need not resolve this issue since, regardless of which date is

used, the result here would not change.  Using the earlier date urged by Defendant,

which is more favorable to Dailey, Dailey cannot recover under Title VII for any

alleged discrete discriminatory acts which occurred before July 18, 1999.  *See Cruce*,

703 F.2d at 863-64.  Dailey further bears the burden of demonstrating that the

continuing violation doctrine is applicable to any of his claims.  *Celestine*, 266 F.3d

at 352.

    2.   <u>Section 1981</u>

    Claims which assert violations of 42 U.S.C. § 1981 are governed by the same

standards applicable to claims raised under Title VII, with the exception that

Section 1981 claims do not require exhaustion of remedies.  *Walker v. Thompson,*

214 F.3d 615, 625 (5th Cir. 2000); *Wilkes v. Fedex Ground Package Sys.,* 359 F.

Supp. 2d 539, 541 (S.D. Miss. 2005); *Ellison v. Darden Restaurants, Inc.,* 52 F.

Supp. 2d 747, 754  n.7 (S.D. Miss. 1999).  Because Section 1981 does not contain its

own statute of limitations, the Supreme Court has determined that certain claims

brought pursuant to Section 1981, namely those made possible by a post-1990

Congressional enactment, are subject to the federal four year catch-all statute of

limitations set forth in 28 U.S.C. § 1658.  *Jones v. R.R. Donnelley & Sons Co.*, 541

U.S. 369, 382 (2004).  Pre-existing causing of action are subject to a "borrowed"

state limitations period, or the most analogous state tort statute of limitations.  *Id.*;

*see also Mitchell v. Crescent River Port Pilots Ass'n*, 265 F. App'x 363, 368 (5th Cir.

2008).

Defendant argues that, under *Felton v. Polles*, 315 F.3d 470, 474 (5th Cir. 2002), the most analogous Mississippi statute of limitations would apply to Plaintiff's claims for denials of promotions, which would be three years, rather than the federal four year catch-all statute of limitations of 28 U.S.C. § 1658. Under the pre-1991 version of Section 1981, a failure to promote claim was actionable only if the nature of the change in position involved the opportunity to enter into a new contract with the employer, such that the promotion would rise to the level of an opportunity for a new and distinct relationship between the employee and the employer, making it subject to the shorter Mississippi state statute of limitations. *See Jones*, 541 U.S. at 382; *Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989); *see also Johnson v. Crown Enterprises, Inc.*, 398 F.3d 339, 341 (5th Cir. 2005) (applying Louisiana's one-year prescriptive period for tort actions to independent contractor's Section 1981 claim for failure to enter into a new contract with him); *Hubert v. City of Baton Rouge/Parish of East Baton Rouge, Dept. of Public Works*, 2009 WL 774343, *2 (M.D. La. March 20, 2009) ("Whether a one year or four year prescriptive period applies to the plaintiff's Section 1981 claim, turns on whether the promotion was an opportunity for a new and distinct relationship between the plaintiff and his employer. If the promotion would give rise to such a new relationship, the one year period of Article 3492 is applicable. If the circumstances of the promotion would not result in a new and distinct relationship between the plaintiff and the City-Parish, then the four year prescriptive period

under federal law would apply."). It is not clear in this case whether the nature of the changes in positions allegedly sought by Plaintiff involved the opportunity to enter into a new contract with Defendant. Out of an abundance of caution, the Court will apply the longer four year limitations period.[5] Because the original Complaint in this action was filed on March 21, 2001, Dailey cannot recover under Section 1981 for any acts occurring prior to March 21, 1997.

C.    Dailey's Individual Claims

Dailey's individual racial discrimination claims fall into six categories: (1) denial of promotions; (2) denial of work leaderman and increased pay opportunities; (3) denial of training; (4) "racial job tracking"; (5) hostile work environment; and (6) retaliation.

1.    Denial of Promotions

Dailey specifically charges that he has applied for certain promotive positions, and although qualified, he was not selected due to his race. Compl., ¶¶ 17, 21-22. Dailey identifies the following instances where this allegedly occurred:

> a)  Starting in or around 1979 and again in 1986, plaintiff applied for the position of welding instructor; in or around 1980 and again in 1982, plaintiff applied for the position of boat foreman; in or around 1985, plaintiff applied for the position of bay foreman, in or around 1994, plaintiff applied for the position of boat foreman/dock foreman; in or around 1998, plaintiff applied for the position of supervisor, positions for which plaintiff was qualified, but for which he was not selected because of his race. *Id.*

The record reflects that Dailey was one of five plaintiffs in *Moore, et al. v.*

---

[5]Applying either the four year federal or the three year Mississippi statute of limitations to the facts of this case does not change the outcome.

*Ingalls Shipbulding, Inc.*, 1:97cv615BrR.   The Complaint in that case was filed on November 19, 1997, and included, among others, a hostile work environment claim, a failure to promote claim, and a general disparate treatment claim.  Mem. Op. and Order entered at p. 4, att. as Ex. "B" to Def.'s Mot. for Summ. J.   On August 20, 1999, U.S. District Judge David Bramlette granted summary judgment in favor of Ingalls, concluding that other than Dailey "showing that he is a member of a protected class" . . .  his allegations were "wholly deficient under the law" and he "fails to raise even a mere suspicion that any element of a prima facie case of race . . . discrimination exists."  *Id.* at p. 23.  The initial Complaint in this case was filed on March 21, 2001, and the  First Amended Complaint was filed on April 26, 2001.

Defendant maintains that because this Court dismissed Dailey's prior action on August 20, 1999, including his promotion claims, Dailey is barred from re-litigating them under the doctrine of res judicata. Def.'s Mem. Br. in Supp. of Mot. for Summ. J. at p. 3.

> Res judicata, or claim preclusion, 'bars all claims that were or *could have been* advanced in support of the cause of action on the occasion of its former adjudication . . . not merely those that were adjudicated.'" *Turner v. Mandalay Resort, Inc.*, 2006 WL 571864 at *2 (N.D. Miss. 2006)(quoting *Ocean Drilling & Exploration Co. v. Mont Boat Rental Services, Inc.*, 799 F.2d 213, 216 (5th Cir. 1986) (emphasis in original)). . . .  In other words, when a plaintiff sues someone for given actions or inactions, he gets only one chance to advance all of the applicable legal theories in one suit.  If that plaintiff loses that suit on the merits . . .  he is barred from filing any other suit before any court regarding the same, or substantially same, events.  *Id.* at *2.

Dailey's complaint about promotions anytime before March 21, 1997, predates the cutoff in this case for statute of limitations purposes.  Therefore, summary

judgment is appropriate as to such claims.  In addition, the Court concludes that the doctrine of res judicata bars any claims prior to August 1999.  Since all of the promotions which Dailey alleges were denied him occurred before this time, Defendant is entitled to summary judgment on Dailey's denial of promotion claims.

In addition, in order to establish a *prima facie* case of discrimination for an alleged failure to promote, Dailey would have to show each of the following four elements: 1) that he is within a protected class; 2) that he was qualified for the position sought; 3) that he was not promoted; and 4) that the position was filled by someone outside the protected class.  *Oden v. Oktibbeha County, Miss.*, 246 F.3d 458, 468 (5th Cir. 2001) (citing *Blow v. City of San Antonio, Texas*, 236 F.3d 293 (5th Cir. 2001)).  There is no dispute in this case that Dailey is a member of a protected class.

Because Dailey has failed to proffer any evidence that these positions were filled by someone outside the protected class, Dailey is also unable to establish a *prima facie* case of discrimination for the alleged failures to promote.  *See Oden*, 246 F.3d at 468.  Summary judgment is appropriate as to these claims for this reason as well.

2.  <u>Denial of Work Leaderman and Increased Pay Opportunities</u>

Dailey claims that he received less compensation than similarly situated Caucasian employees, when he operated the seam welder shop from March to August 2005.  Compl., ¶ 23.  To establish a *prima facie* case of discrimination on this claim, Dailey must show (1) that he is a member of a protected class; (2) that he was qualified for his position; (3) that he suffered an adverse employment action; and (4) that other, similarly situated co-workers outside the protected class were treated differently.  *Hart*

*v. Life Care Center of Plano*, 243 F. App'x 816, 818, 2007 WL 1855136, *1 (5th Cir. 2007) (citing *Okoye v. Univ. of Texas Houston Health Science Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)).  "[F]or all Title VII claims, '[a]dverse employment actions include only ultimate employment decisions such as hiring, granting leave, discharging, promoting, or compensating." *McCoy v. City of Shreveport*, 492 F.3d 551, 559 (5th Cir. 2007) (quoting *Green v. Adm'rs of Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002)).

Paragraph 23 of Plaintiff's Complaint states as follows:

Plaintiff has received less compensation than similarly situated White co-workers for doing the same job. For example, in or around March 2005, plaintiff was assigned to work on the seam welder and even though this position paid more than plaintiff's previous position, he did not receive the additional compensation. In or around April 2006, plaintiff learned from a McGuiness, a Labor Relations representative, and Bubba Barrett, a union steward, that he would not be re-rated for the seam welder's pay. Plaintiff is aware, however, of White employees who were assigned to work on the seam welder for less than one month, and who both received additional compensation and retained that additional seam welder pay even after returning to their previous positions

Compl., ¶ 23.

However, when asked about this higher wage level in his deposition, Plaintiff acknowledged that he did not know of any employees who were paid at this higher level until their retirement.

Q:   Do you know anybody who has gotten work leaderman pay until his retirement even though he is not working on the seam welder and not working as work leaderman?
                              * * *
A:   I don't know.  I can't say till their retirement.

Oct. 26, 2010, Dep. of Jimmie Dailey, at p. 83, att. as Ex. "E" to Def.'s Mot. for Summ. J.

-14-

> Q:     And when you're working the seam welding machine, you got paid
>        more?
>
> A:     Right.

Thus Dailey conceded that he was paid a higher wage during his time in this
position.  Dailey offers no additional evidence in support of this claim beyond the
bare allegations in his Complaint.  Dailey has not carried his burden and summary
judgment on this claim is appropriate.

3.     <u>Denial of Training</u>

Dailey alleges that he

> has made his supervisor(s) aware that he desired to receive certain
> training, including Inconel.  However, he had never been selected for
> the requested training, in spite of being qualified to be chosen, while
> his similarly situated White colleagues have overwhelmingly been
> selected to do so.

Compl.,¶ 25.

In order to survive summary judgment on his denial of training claim, Dailey
must meet the standard for a *prima facie* case of discrimination.  Of relevance here,
Dailey must show that he suffered an adverse employment action.  *Okoye*, 245 F.3d
at 512–13.  Dailey argues that Defendant "violated the Collective Bargaining
Agreement many times" . . .  and recalled "Annie Fairley had to file a grievance in
order to get Inconel training, which had been denied to her by management."  Aff. of
Jimmie Dailey, at p. 3, att. as Ex. "1" to Pl.'s Resp.

Reviewing the record before it, considering all undisputed facts, and resolving
all disputed facts in Dailey's favor, the Court cannot conclude that Dailey has
demonstrated that he suffered an adverse employment action. *See Shackelford v.*

*Deloitte & Touche, LLP*, 190 F.3d 398, 406–07 (5th Cir. 1999) (holding that, denial of training on specialized software that plaintiff's position may have occasionally required her to use, was not an adverse employment action covered by Title VII, because there was no reasonable basis to conclude that such training would "tend to" result in a change of employment status, benefits, or responsibilities); *see also Hollimon v. Potter*, 365 F. App'x 546, 548, 2010 WL 338020, *2 (5th Cir. 2010) (holding that "a refusal to train is not an adverse employment action under Title VII"); *Earle v. Aramark Corp.*, 247 F. App'x 519, 523, 2007 WL 2683821, *2 (5th Cir. 2007) (holding that being denied access to training and leadership courses was not considered adverse employment decision for purposes of sex discrimination). Accordingly, Dailey has failed to establish a *prima facie* case of discrimination as to this claim, and summary judgment is appropriate.

   4.   Racial Job Tracking

   Dailey further asserts that Defendant maintains "a practice of 'job steering', resulting in Black employees being assigned to, and then denied the opportunity to move out of  dangerous, dirty, and generally less desirable work areas because of their race."  Compl.,  ¶ 17(k).  Dailey contends that he "has never been selected to participate in any sea trials or other trips in spite of being qualified to be chosen, while his similarly situated White colleagues have overwhelmingly been selected to do so."  Compl., ¶ 24.  Dailey has identified no specific white employees who allegedly received such preferential treatment.  Moreover, Dailey testified that he could not remember if he ever asked to go on a sea trial, and that he last asked

supervisor Bo Reed to go back "in the '70's."  Oct. 26, 2010, Dep. of Jimmie Dailey, at p. 53, att. as Ex. "E" to Def.'s Mot. for Summ. J.

Title VII's and Section 1981's statutes of limitations bar these claims. Dailey cannot recover under Title VII for any alleged discrete discriminatory acts occurring before July 18, 1999, nor can he recover under Section 1981 for any acts occurring before March 21, 1997.   In addition, this purported disparate treatment is not actionable, because Dailey alleges no ultimate employment decision.  *Ellis v. Principi,* 246 F. App'x 867, 870, 2007 WL 2510620, *2 (5th Cir. 2007) (holding that allegation that plaintiff was given less favorable work assignments than other employees was insufficient to sustain a disparate treatment claim because it alleges no ultimate employment decision).  Defendant is entitled to summary judgment on this claim.

5.    Hostile Work Environment Claim

Dailey contends that throughout his employment with Defendant, he was subjected to racial hostilities and intimidation.  Specifically, Dailey alleges that he

> has been exposed to offensive racially derogatory writings, depictions, and/or graffiti on a constant basis in a number of places at [the shipyard].

Compl., ¶ 27.

Dailey also maintains that he has been exposed to racial epithets and has observed nooses in the shipyard, and that Defendant knew of these occurrences but failed to promptly prevent or correct them.  Compl., ¶ 28.

a.  <u>Res Judicata and the Applicable Statutes of Limitations</u>

In Plaintiff's earlier suit, Judge Bramlette granted summary judgment in favor of Ingalls, concluding that Dailey's hostile work environment claim was without merit.  Mem. Op. and Order entered at p. 26, att. as Ex. "B" to Def.'s Mot. for Summ. J.  Thus, any hostile work environment claim which accrued prior to August 1999, is barred by the doctrine of res judicata.

As discussed earlier herein, Dailey also cannot recover under Title VII for any alleged discrete discriminatory acts occurring before July 18, 1999, nor can he recover under Section 1981 for any acts occurring before March 21, 1997.  In its Brief, Defendant maintains that acts alleged to have created a hostile work environment which occurred before March 21, 1997, are time barred.  If Dailey's allegations of hostile work environment were viewed as discrete acts, then Defendant would be correct in focusing its analysis only on those alleged acts which occurred after that date.  However, Dailey has raised the continuing violation doctrine in his Complaint.  Compl., ¶ 32.

"[T]he continuing violation doctrine does not automatically attach in hostile work environment cases, and the burden remains on the employee to demonstrate an organized scheme led to and included the present violation."  *Celestine*, 266 F.3d at 352.  Dailey has not demonstrated the applicability of the continuing violation doctrine in this case, and the Court is not persuaded that it should be applied based upon the facts here.  Moreover, "where a pattern of harassment spreads out over years, and it is evident long before the plaintiff sues that [he] was a victim of

actionable harassment, [he] can not reach back and base [his] suit on conduct that occurred outside the statute of limitations." *Id.* (quoting *Hardin v. S.C. Johnson & Son, Inc.,* 167 F.3d 340, 344 (7th Cir. 1999)).  The Court will not apply the continuing violation doctrine to Dailey's  hostile work environment claim, and based on res judicata, it will focus only on those alleged acts which Dailey maintains occurred after August 1999.  In this case, all acts Dailey complains of occurred prior to 1999,[6] with the exception of him viewing certain graffiti.  Dailey has not alleged, with any specificity, the time frame during which he observed graffiti.  Aff. of Jimmie Dailey, at. p. 6, att. as Ex. "1" to Pl.'s Resp. to Mot. for Summ. J.; Pl.'s Dep.

  b. <u>*Prima Facie* Case</u>

   To establish a *prima facie* case on a hostile work environment claim, Dailey must show that: (1) he belonged to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment was based on race; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Ellis*, 246 F. App'x 867, 2007 WL 2510620, at *3 (citing *Frank v. Xerox Corp.,* 347 F.3d 130, 137 (5th Cir. 2003)); *see also Long v. Eastfield College,* 88 F.3d 300, 309 (5th Cir. 1996).  "For harassment on the basis of race to affect a term, condition, or privilege of employment . . . it must be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."

---

   [6]Dailey conceded that the nooses which he observed and the racial remarks made to others which he overheard all occurred in the late 1980's and early 1990's. Pl.'s Dep. at pp. 33-35, att. as Ex. "E" to Def.'s Mot. for Summ. J.

*Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002); *see also Weller v. Citation Oil & Gas Corp.,* 84 F.3d 191, 194 (5th Cir. 1996) (Title VII's overall goal of equality is not served if a claim can be maintained solely based on conduct that wounds or offends, but does not hinder an employee's performance).

For harassment to be sufficiently severe or pervasive to alter the conditions of the victim's employment, and therefore be actionable, the conduct complained of must be both objectively offensive, meaning that a reasonable person would find it hostile and abusive, and subjectively offensive, meaning that the victim perceived it to be so. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21-22 (1993); *see also Shepherd v. Comptroller of Public Accounts of State of Texas,* 168 F.3d 871, 874 (5th Cir. 1999). Thus, not only must Dailey have perceived the environment as hostile, the conduct must have been such that a reasonable person would find it hostile or abusive. *Harris,* 510 U.S. at 21-22.

To determine whether the victim's work environment was objectively offensive, courts consider the totality of the circumstances, including (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is physically threatening or humiliating, or merely an offensive utterance; and (4) whether it interferes with an employee's work performance. *Id.* at 23. No single factor is determinative. *Id.*

Dailey claims that a co-worker, Troy Cuevas, painted a Confederate flag on his locker and that Defendant failed to take remedial action. Pl.'s Resp. to Def.'s Mot. for Summ. J. at p. 15. However, when asked about this particular incident

during his deposition, Dailey testified that he was satisfied with how management resolved the matter.  Oct. 26, 2010 Dep. of Jimmie Dailey, at pp. 38-39, att. as Ex. "E" to Def.'s Mot. for Summ. J.   Assuming that these signs were indicative of racial animus, Dailey has not shown that Defendant failed to take prompt remedial action as to this act, something he must establish to support the fifth element of his *prima facie* case.  *See Ellis,* 2007 WL 2510620, at *3.

Dailey also testified that he observed graffiti in the shipyard restrooms.  Oct. 26, 2010, Dep. of Jimmie Dailey, at pp. 51-52, attached as Ex. "E" to Def.'s Mot. for Summ. J.   The date or dates on which he saw this graffiti are not clear.  There is no evidence in the record that any of this or any other racially offensive graffiti was directed at Dailey.  Applying the *Harris* factors to this case, Dailey has not shown the frequency or severity of any racially offensive graffiti which occurred after August 1999.  While the referenced graffiti allegedly contained offensive utterances, Dailey has not demonstrated that any of it during the relevant time period was physically threatening or humiliating.

In sum, accepting Dailey's testimony as true, he has not shown that the totality of the properly considered alleged acts were physically threatening or humiliating, rather than merely offensive utterances or conduct.  The observation of racist graffiti in the restrooms on a few, unspecified dates, does not rise to the level of sufficiently frequent occurrences which permeated the work environment with racially discriminatory intimidation, ridicule, and insult, to support a hostile work environment claim.  *Harris*, 510 U.S. at 23.  Nor has Dailey shown that Defendant

knew or should have known of the harassment and failed to take prompt remedial action.  This is also fatal to his *prima facie* case.  Based on the totality of the circumstances, the evidence does not create a material fact question precluding summary judgment on Dailey's hostile work environment claim.

6.  <u>Retaliation</u>

Dailey's Complaint generally alleges that Defendant has intentionally implemented policies and practices which result in systemic discrimination against Plaintiff and other Black employees "[b]y retaliating against Black employees after they have complained or challenged, in any way, the discriminatory policies, procedures, and practices that permeate the work environment" at Defendant's shipyard.  Compl., ¶ 17(i).   Dailey also alleges that Defendant retaliated against him, by failing to promote him: 1) after he reported that someone painted a large Confederate  flag on his locker; and 2) after he directed and filed numerous union complaints regarding Defendant's promotional policies.  *Id.*, ¶ 26.

> In order to establish a *prima facie* case of retaliation, Dailey must show:
>
> (i) he engaged in a protected activity, (ii) an adverse employment action occurred, and (iii) there was a causal link between the protected activity and the adverse employment action.

*Hernandez v. Yellow Transp., Inc.,* 641 F.3d 118, 129 (5th Cir. 2011)(citing *Taylor v. United Parcel Serv., Inc.*, 554 F.3d 510, 523 (5th Cir. 2008)).

Assuming for the sake of argument that an adverse employment action occurred, the record is devoid of evidence that Dailey suffered such adverse employment action because he engaged in a protected activity.  This is fatal to his *prima facie* case.  *See Hernandez,* 641 F.3d at 129.  Moreover, Dailey offers no

additional argument or evidence in support of his retaliation claim beyond the bare allegations in his Complaint.  Simply put, Dailey has not carried his summary judgment on his retaliation claim.

### III.  CONCLUSION

For the foregoing reasons, Dailey has not met his burden of demonstrating that his claims for denial of promotions, denial of work leaderman and increased pay opportunities, denial of training, "racial job tracking," hostile work environment, and retaliation can withstand summary judgment.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, for the reasons more fully stated herein, Defendant's Motion for Summary Judgment [404-1] filed February 15, 2011, should be and hereby is **GRANTED,** and Dailey's Complaint against Defendant should be and hereby is **DISMISSED WITH PREJUDICE**.

**SO ORDERED AND ADJUDGED**, this the 15th day of September, 2011.

*s/ Halil Suleyman Ozerden*

HALIL SULEYMAN OZERDEN
UNITED STATES DISTRICT JUDGE